UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____x
MARSHA SAILSMAN,                             :     **VERIFIED COMPLAINT**
                                             :
             Plaintiff,               :     Docket No.: ___CV____ (_____)
                                             :
    -against-                               :     **JURY TRIAL DEMANDED**
                                             :
KINGSBROOK JEWISH MEDICAL CENTER,            :
and RUTLAND NURSING HOME,                    :
                                             :
             Defendants.              :
_____x

## NATURE OF ACTION

1. Plaintiff, MARSHA SAILSMAN ("Sailsman" or "Plaintiff") brings this action against Defendants, KINGSBROOK JEWISH MEDICAL CENTER ("Kingsbrook" or "Defendant") and RUTLAND NURSING HOME ("Rutland" or "Defendant") for monetary relief and damages (compensatory and punitive) that plaintiff sustained as a result of defendants' disability discrimination and retaliation against plaintiff in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 706 et seq. ("Rehabilitation Act"), , the New York State Human Rights Law, New York Executive Law § 296 et seq., (the "Executive Law"), the Administrative Code of the City of New York § 8-107 et seq. (the "City Law"), the Family Medical Leave Act (FMLA) and all other applicable federal, state and local statutes.

2. The plaintiff, through her attorneys, the LAW OFFICE OF CHRISTINE A. RODRIGUEZ, complaining of the defendant, respectfully alleges:

## JURISDICTION

3. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(4). The Court has supplemental jurisdiction over the claims brought under the Executive Law and the Administrative Code pursuant to 28 U.S.C. § 1367.

4. As the unlawful practices complained of herein occurred within the Eastern District of New York, venue is proper in this District pursuant to 28 U. S. C. § 1391.

5. The amount in controversy exceeds $75,000.00 excluding interest and costs.

6. Plaintiff filed a complaint alleging disability discrimination on September 23, 2014 with the New York State Division of Human Rights (DHR). On December 10, 2014, through counsel, plaintiff requested an annulment of her election of remedies from DHR. This request was granted by an annulment determination dated January 20, 2015.

7. On or about March 2, 2015, plaintiff also received a Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC).

8. This complaint has been filed within ninety days of receipt of the Notice of Right to Sue from the EEOC.

## PARTIES

9. Plaintiff is a Certified Nurse Assistant (CNA) duly licensed and registered in the State of New York.

10. Plaintiff is a United States Citizen.

11. At all times relevant herein, plaintiff was an employee of defendants and is a qualified disabled person as defined by the federal statutes, New York State and New York City law cited herein.

12. Plaintiff was employed by defendant Kingsbrook as a CNA at defendant's Rutland Nursing Home from June 2005 until her employment was terminated on May 16, 2014.

13. Kingsbrook, a full service teaching hospital, was, at all times relevant hereto, a not-for-profit corporation duly organized and existing pursuant to the laws, statutes and charters of the State of New York, with its principal place of business in Kings County, New York at 585

Schenectady Avenue, Brooklyn, New York 11203.

14. Kingsbrook receives various forms of federal funding, including, Medicaid and Medicare, for services it provides.

15. Defendant Rutland, a division of Kingsbrook, is an adult and pediatric long term care facility, with its principal place of business in Kings County, New York at 585 Schenectady Avenue, Brooklyn, New York 11203.

16. Rutland receives various forms of federal funding, including, Medicaid and Medicare, for services it provides.

## FACTUAL ALLEGATIONS

17. Prior to the termination of her employment, plaintiff had been employed by defendants for nearly ten years.

18. On May 29, 2012 plaintiff, who was pregnant and employed by defendant at Rutland Nursing Home as a CNA, requested leave under the Family Medical leave Act (FMLA) from July 24, 2012 until August 31, 2012 in anticipation of the birth of her child.

19. Plaintiff worked nights. On days that she was scheduled to work, plaintiff's shift started at 10:45pm and ended the following morning at 7:00am.

20. On June 5, 2012, while pregnant, plaintiff felt a lump in her right breast and sought medical advice related to this discovery.

21. Later that month in June 2012 plaintiff was diagnosed with breast cancer.

22. On June 10, 2012, more than a month before her due date, plaintiff gave birth in order to start chemotherapy to combat her breast cancer.

23. In July 2012, plaintiff began receiving chemotherapy treatments for breast cancer and received four (4) cycles of chemotherapy between July 2012 and August 2012.

24.     Defendant did not initially approve plaintiff's original FMLA request for care of her child after birth, but instead on August 10, 2012, defendant approved a new request from plaintiff for FMLA leave retroactive to June 5, 2012 until January 3, 2013 based on a request from her treating physician.

25.     On September 19, 2012 plaintiff had surgery to remove cancer from her breast.

26.     Additionally, in September 2012, plaintiff was treated with Taxol chemotherapy for her cancer and she suffered adverse effects from the medication.

27.     In October 2012, one of plaintiff's treating physicians wrote a medical note for plaintiff which stated that plaintiff had been under his care since June 5, 2012 and was cleared to go back to work starting November 1, 2012.

28.     On November 1, 2012 plaintiff submitted her physician's note to defendant's employee health department and returned to work.

29.     On December 7, 2012 and December 8, 2012, plaintiff called out sick due to side effects of the cancer treatment.  Plaintiff still had approved FMLA leave available to her until January 3, 2013

30.     From January 2013 until February 2013, underwent another round of chemotherapy with Axbane because of her prior bad reaction to the Taxol chemotherapy treatment.

31.     Following the period of treatment with chemotherapy from January 2013 until February 2013, plaintiff was then prescribed on fifty-two (52) weeks of Herceptin treatment by her physician, which were scheduled to last until February 2014.

32.     On January 2, 2013 and January 3, 2013, plaintiff called in sick because she was ill due to the adverse effects from the cancer treatment.  Plaintiff's approved FMLA leave had

not yet been exhausted.

33. In February 2013, after finishing a round of chemotherapy, plaintiff began her fifty-two (52) week treatment of Herceptin, also related to her breast cancer

34. Plaintiff informed defendants that she was still receiving treatment for her cancer. Plaintiff had documentation from her physician, which she provided to the defendants through employee health department.

35. Plaintiff was out of work and arrived late to work on various dates during February 2013 because of adverse effects from her continued cancer treatments. Plaintiff used personal, sick and holiday leave available to her at the time.

36. With full knowledge that plaintiff was still undergoing treatments for breast cancer, on March 7, 2013, plaintiff's supervisor, Marie Remfort, gave plaintiff a counseling notice for excessive absences and lateness from December 1, 2012 through February 28, 2013.

37. During her the entire time she had been employed by defendants, plaintiff had never been disciplined and had no issues with attendance prior to March 7, 2013.

38. During the time period referred to in the counseling notice, plaintiff received chemotherapy as well as other treatment for her breast cancer. Moreover, for a portion of the time listed in the notice, plaintiff was still approved for FMLA leave.

39. Plaintiff told her supervisors that she was absent and late due to the cancer treatments and the side effects of treatments. Defendants did not offer to accommodate plaintiff in any way, but instead continued to discipline her when she needed to be out of work due to cancer related illness.

40. In response to plaintiff's explanations for her absences and tardiness, neither plaintiff's supervisor, nor anyone at employee health, advised plaintiff that should renew her

application for FMLA leave, or otherwise seek accommodation, because plaintiff needed to out of work intermittently for medical treatment and illness due to cancer treatments.

41. Between March 2013 and June 2013, plaintiff used sick time, holiday and vacation time available to her when she needed to be out due to illness brought on by her cancer treatments.

42. Between July 2013 and August 2013, plaintiff received radiation treatment for her breast cancer.

43. On July 17, 2013, another supervisor, Sandra Lewis, issued plaintiff a disciplinary notice for excessive absences and lateness between March 8, 2013 and June 25, 2013.

44. During the time referenced in the July 17, 2013 disciplinary notice plaintiff was undergoing Herceptin treatments for breast cancer. Plaintiff had advised her supervisors on numerous occasions that she continued to receive treatment for cancer during this time and would routinely provide documentation through employee health.

45. Once again plaintiff explained to her supervisors that she was undergoing treatment for cancer. Defendants still did not engage in any discussions with plaintiff about accommodation of her medical condition through approved leave or advise her of any rights she might have to intermittent leave under the FMLA.

46. During July 2013 through October 2013, plaintiff was required to be out of work for several days due to illness brought on by her cancer treatment. Plaintiff made efforts to keep her supervisors apprised of her condition.

47. On October 24, 2013, Sandra Lewis gave plaintiff yet another written disciplinary warning for excessive absence and lateness. This time defendants suspended plaintiff for one day as discipline.

48. Plaintiff was still receiving Herceptin treatments and radiation treatments during this time and she had informed defendants of this.

49. Plaintiff continued to be treated with Herceptin during November 2013 through February of 2014. The effects of this treatment continued to cause her illness that required her to be out of work for several days during this period. Plaintiffs advised her supervisors about her condition.

50. In February 2014, plaintiff's Herceptin treatments ended. However, plaintiff was still experiencing illness and residual adverse effects from almost two years of breast cancer treatment.

51. On March 31, 2014, plaintiff was out of work due to the residual effects of the cancer treatment.

52. On April 1, 2014, plaintiff's physician diagnosed plaintiff with an upper respiratory infection and wrote a note for plaintiff to inform her employer that she could not report to work due to illness. Plaintiff was not on the schedule to work on April 2, 2014, but remained out of work sick on April 3 and 4, 2014.

53. Shortly after being diagnosed with an upper respiratory infection, on April 16, 2014, plaintiff saw another physician for pain in the same location where she was previously diagnosed with cancer, at which time she was informed by her physician that she required additional surgery to her breast.

54. On April 18, 2014, two days after seeing her physician and being advised of the need for additional surgery, plaintiff called out sick from work due to pain.

55. At all times relevant herein, any time plaintiff was out of work to recover from illness related to breast cancer and required treatment, plaintiff needed that time to recover as an

accommodation for her medical condition, after which plaintiff was able to return to work and perform the essential functions of her job as a CNA for defendants.

56.     Plaintiff was fully qualified to perform her job as a CNA at all times relevant herein.

57.     On May 16, 2014, plaintiff's supervisor, Marie Remfort, issued plaintiff a written disciplinary notice for excessive absences and terminated plaintiff's employment.

58.     The written disciplinary notice stated that plaintiff was out sick on six (6) different occasions equaling nine (9) days between October 23, 2013 and May 12, 2014 and late on twenty-seven occasions equaling nine (9) absences between October 23, 2013 and May 12, 2014.

59.     Plaintiff again explained to her supervisor that the reason she was absent and tardy was due to illness and side effects related to her continued cancer treatments, and in fact plaintiff was still receiving Herceptin treatment for her breast cancer until February 2014, and suffered illness from the after effects between February 2014 and May 2014.

60.     Plaintiff had repeatedly provided defendant with information regarding her medical condition and the need for continued treatment through May 2014 by providing medical notes to employee health, communicating with the human resources department and speaking to her supervisors about her condition and advising her supervisor when she was ill and needed to be out of work due to illness.

61.     On May 21, 2014, plaintiff's physician wrote a letter to defendant confirming that plaintiff suffered from breast cancer and was under his care since 2012 and had to undergo several surgeries as well as chemotherapy and other treatments.  Plaintiff also stated that plaintiff suffered adverse effects of chemotherapy, which required rest and intermittent time off from

work.

62. Plaintiff grieved the termination of her employment through her union, 1199SEIU.

63. Pursuant to the collective bargaining agreement between 1199 and defendant Kingsbrook, in June 2014, plaintiff was called to a grievance conference with a union representative and defendants' vice president of human resources, John McKeon.

64. Plaintiff was one of several employees whose disciplinary actions were to be reviewed at the conference. A number of the other employees had also been disciplined and terminated for excessive absence.

65. During that conference, plaintiff advised McKeon that most of her absences were due to continued treatment and residual illness related to her breast cancer, that she had advised employee health, her supervisors and human resources of her medical condition and that she was not advised that she should request additional FMLA leave after her original FMLA leave expired in 2013.

66. McKeon responded to plaintiff by telling her that the only way that she would be reinstated would be if she provided documentation from her medical providers to cover all of her absences during 2013 and 2014. Otherwise, the termination of plaintiff's employment would stand.

67. Defendant had already been provided with medical notes from plaintiff's medical providers verifying that she required continued medical treatment for cancer and suffered from illness that required her to be out of work intermittently.

68. At the grievance meeting defendant did not offer plaintiff any other options but to prove that she was undergoing chemotherapy or otherwise treating for cancer during all of her

absences in the prior year.

69. All of the other employees who attended that conference and had been terminated were reinstated and none were required to provide the type of proof requested of plaintiff as a pre-condition to reinstatement.

70. Between June 10, 2014 and June 12, 2014 plaintiff underwent additional surgery related to her breast cancer.

71. Subsequent and related to that surgery, plaintiff went into cardiac arrest and required additional medical treatment between June 19, 2014 and June 20, 2014.

72. On September 23, 2014, plaintiff filed a complaint with DHR against defendants for discrimination based on disability.

73. Plaintiff's complaint stated that plaintiff was disciplined for excessive absence during the time she was undergoing treatment for cancer and despite the fact that she had advised defendant about her condition and provided documentation to verify her medical condition and need for time out of work. Plaintiff also stated that all of the other employees at the grievance conference with Mr. McKeon were offered reinstatement except her.

74. On October 24, 2014, plaintiff attended a final grievance conference with her union delegate and defendants' employee labor relations manager Olakunle Saliu.

75. After that meeting, plaintiff was advised that she would be reinstated, but only if she withdrew and voluntarily dismissed the complaint of discrimination that she had filed with DHR and Mr. Saliu scheduled a meeting for November 7, 2014 for plaintiff to accept or reject this offer. At the time, plaintiff had already been out of work for five months.

76. Defendants did not offer any form of accommodation for plaintiff's medical condition or compensation for the time she had been kept out of work since the termination of

her employment.

77. Plaintiff chose not to waive her rights without any accommodation or other consideration from defendants and to continue with her complaint of discrimination.

78. Plaintiff requested an annulment of her election of remedies from DHR and received and annulment determination on January 20, 2015, at which time plaintiff chose to proceed with a complaint in New York State court.

## First Cause of Action
## Discrimination and Retaliation in Violation of the Rehabilitation Act

79. Plaintiff repeats, reiterates and realleges paragraphs 1 to 78 of this Complaint as if fully set forth herein.

80. Section 504 of the Rehabilitation Act prohibits discrimination based on a person's disability and retaliation for a person's opposition to such discrimination by employers and organizations that receive financial assistance from any Federal department or agency, such as defendant.

81. Defendants are covered entities under Section 504 of the Rehabilitation Act as they are Medicaid and Medicare providers and, upon information and belief, receive other federal financial assistance to provide services to the public.

82. Plaintiff, a qualified disabled person as defined by the Rehabilitation Act, opposed defendants' discriminatory practices by the conduct described above.

83. Defendants' continued discriminatory conduct and retaliation, as evidenced by the ultimate termination of plaintiff's employment, constitutes unlawful discrimination and retaliation in violation of Section 504 of the Rehabilitation Act.

...

84. Defendants engaged in their discrimination and retaliatory actions with malice and with reckless indifference to Plaintiff's federally protected rights.

85. Defendants' actions described above directly and proximately have caused, and continue to cause plaintiff to suffer a loss of future professional opportunities and future income, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

**Second Cause of Action**
**Interference with FMLA Rights in Violation of 29 U.S.C. §2615(a)(1)**

86. Plaintiff repeats, reiterates and realleges paragraphs 1 to 85 of this complaint as if fully set forth herein.

87. The Family Medical Leave Act (FMLA), 29 U.S.C. §2615(a)(1) provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights.

88. At all times relevant herein as described above, plaintiff was an employee of defendants and a qualified person with a serious medical condition entitled to benefits under the FMLA.

89. As described above, defendants with malice and with reckless indifference to plaintiff's federally protected rights, willfully discriminated against plaintiff in the terms and conditions of her employment by illegitimately preventing plaintiff from obtaining the benefits she was entitled to under the FMLA and unfairly disciplining plaintiff.

90. Defendants' failure to properly advise plaintiff of her FMLA rights and defendant's unwarranted discipline, constituted interference in violation of the FMLA.

91. Defendants engaged in this interference willfully, with malice and with reckless indifference to plaintiff's federally protected rights.

92. Defendants' actions described above directly and proximately have caused, and continue to cause, plaintiff to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

## Third Cause of Action
## Retaliation for Exercising FMLA Rights in Violation of 29 U.S.C. §2615(a)(1)

93. Plaintiff repeats, reiterates and realleges paragraphs 1 to 92 of this complaint as if fully set forth herein.

94. The FMLA prohibits retaliation for the exercise or attempt to exercise FMLA rights.

95. At all times relevant herein as described above, plaintiff was an employee of defendant and a qualified person with a serious medical condition entitled to benefits under the FMLA.

96. As described above, defendants with malice and with reckless indifference to plaintiff's federally protected rights, willfully discriminated against plaintiff in the terms and conditions of her employment by retaliating against her for taking leave which she believed to be covered by the FMLA, repeatedly disciplining plaintiff for taking leave after interfering with plaintiff's right to obtain approved FMLA leave, and ultimately terminating plaintiff's employment, based in part on the unfair discipline imposed on plaintiff for exercising her FMLA rights.

97. Defendants' unwarranted discipline and the decision to terminate plaintiff's employment constituted retaliation in violation of the FMLA.

98. Defendants engaged in their retaliatory actions with malice and with reckless indifference to plaintiff's federally protected rights.

99. Defendants' actions described above directly and proximately have caused, and continue to cause, plaintiff to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, anguish, pain and suffering, humiliation, indignity, personal embarrassment, and damage to her professional reputation.

**Fourth Cause of Action**
**Disability Discrimination in Violation of the Executive Law**

100. Plaintiff repeats, reiterates, and realleges paragraphs 1 to 99 of this complaint as if fully set forth herein.

101. By the acts and practices described above, defendants have discriminated against plaintiff in the terms and conditions of her employment by acting adversely against her on the basis of a disability, including, but not limited to, failing to accommodate plaintiff by allowing her to take intermittent leave for her medical condition without discipline, failing to advise plaintiff of her FMLA rights, repeatedly and unjustifiably disciplining plaintiff for taking leave despite her demonstrated medical condition and terminating plaintiff's employment. These actions are in violation of the Executive Law §§ 290 to 297.

102. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendants' discriminatory acts.

**Fifth Cause of Action**
**Retaliation in Violation of the Executive Law**

103. Plaintiff repeats, reiterates, and realleges paragraphs 1 to 102 of this complaint as if fully set forth herein.

104. By the acts and practices described above, defendants have retaliated against plaintiff for complaining of and opposing discrimination in violation of the Executive Law.

105. Plaintiff is now suffering irreparable injury and monetary damage from defendants' retaliatory conduct and will continue to do so unless and until the Court grants relief.

## Sixth Cause of Action
### Disability Discrimination in Violation of the Administrative Code

106. Plaintiff repeats, reiterates and realleges paragraphs 1 to 105 of this Complaint as if fully set forth herein.

107. By the acts and practices described above, defendants have discriminated against plaintiff in the terms and conditions of her employment by acting adversely against her on the basis of a disability, including, but not limited to, failing to accommodate plaintiff by allowing her to take intermittent leave for her medical condition without discipline, failing to advise plaintiff of her FMLA rights, repeatedly and unjustifiably disciplining plaintiff for taking leave despite her demonstrated medical condition and terminating plaintiff's employment. These acts are in violation of the Administrative Code.

108. Defendants acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

109. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendants' discriminatory acts.

## Tenth Cause of Action
### Retaliation in Violation of the Administrative Code

110. Plaintiff repeats and realleges paragraphs 1 to 109 of this Complaint as if fully set forth herein.

111. By the acts and practices described above, defendants have retaliated against plaintiff for complaining of and opposing racial, national origin and disability discrimination in violation of the Administrative Code.

112. Defendants acted with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

113. Plaintiff is now suffering irreparable injury and monetary damage from defendants' retaliatory conduct and will continue to do so unless and until the Court grants relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an award:

(a) directing defendants to pay plaintiff compensatory damages, an amount that exceeds the jurisdictional minimum of this court, including, but not limited to, back pay, front pay and benefits;

(b) directing defendant to pay plaintiff punitive damages;

(c) directing defendant to pay an additional amount to compensate plaintiff for the emotional distress and reputational damage that defendants' unlawful conduct has caused plaintiff, an amount that exceeds the jurisdictional minimum of this court

(d) awarding plaintiff such interest as is allowed by law;

(e) awarding plaintiff her reasonable attorneys' fees and costs; and

(f) granting such other and further relief as the Court deems necessary and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

Dated: New York, New York
April 14, 2015

                                LAW OFFICE OF CHRISTINE A. RODRIGUEZ

                                By: CHRISTINE A. RODRIGUEZ, ESQ.
                                Attorneys for Plaintiff
                                1350 Avenue of the Americas, 2nd Floor
                                New York, New York 10019
                                (212) 430-6525

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
MARSHA SAILSMAN,

                Plaintiff,                                Docket No.: ___CV____ (_____)

                -against-

KINGSBROOK JEWISH MEDICAL CENTER,
and RUTLAND NURSING HOME,

                Defendants.
------------------------------------------------------------x

## VERIFICATION

STATE OF NEW YORK    )
                                )
COUNTY OF NEWYORK  )

      MARSHA SAILSMAN, duly sworn, deposes and says:

      I am the Plaintiff in the above entitled action. I have reviewed the foregoing COMPLAINT and know the contents to be true to my own knowledge, except to those matters alleged to be upon information and belief, and as to those matters, I believe them to be true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                                                                      _____
                                                                           MARSHA SAILSMAN

Sworn to before me this 14th day
of April, 2015

_____
Notary Public
My Commission Expires on _____

CHRISTINE A. RODRIGUEZ
Notary Public State of New York
No. 01RO6032266
Qualified in New York County
Commission Expires August 22, 2018

*Index No.* ___CV_____                                                              *Year*  2015

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
═══════════════════════════════════════════════════════════════════
MARSHA SAILSMAN,

                                  Plaintiff,

      -against-

KINGSBROOK JEWISH MEDICAL CENTER and
RUTLAND NURSING HOME,

                                Defendants.
═══════════════════════════════════════════════════════════════════
### VERIFIED COMPLAINT
═══════════════════════════════════════════════════════════════════

### LAW OFFICE OF CHRISTINE A. RODRIGUEZ

ATTORNEYS FOR
PLAINTIFF, MARSHA SAILSMAN

**1350 AVENUE OF THE AMERICAS**
**2ND FLOOR**
**NEW YORK, NY 10019**
**(212) 430-6525**
═══════════════════════════════════════════════════════════════════

*Dated:* April 14, 2015